242682 Quinn versus City of New York. Good morning, may it please the court. Julia Solomon Strauss for the plaintiffs. The district court erroneously granted summary judgment to the city in this case before the close of discovery, even though we had made several specific requests for discovery from the city and to the court. Regardless of what the current record shows, and we do argue in our briefs why the current record did not allow the district court to grant summary judgment on this record. The plaintiffs asked for depositions of the city's witnesses and to ensure that they had received all the records they saw. This court cannot hold as a matter of law that additional evidence could not possibly have created a genuine issue of material fact about whether the city caused the defect that caused Mr. Quinn to trip and fall. Or whether the additional records could have shown the city's written notice of the defect. The district court ruled against plaintiffs on these intensely factual questions without giving the plaintiffs the opportunity to obtain that evidence. On appeal, the city primarily argues that we should have filed. You had a trial about the cause of this accident, right? There was no trial in this case. Proceeding against Conair, right? There was a settlement in this different case involving the same plaintiff and the same injury, yes. Did you take discovery during that proceeding? There was some limited discovery, but importantly, the discovery wasn't as against the city. And to prove our case here, we need to show either that the city had written notice of the defect or that it caused the defect. All of that evidence is in the possession of the city, not Con Ed or the plaintiffs in this case. So that's precisely why these highly contested issues of fact were warranted. Additional discovery was warranted as to these highly contested issues of fact. The city did produce evidence suggesting that it had never gotten written notice. What more did you want? That's right, Your Honor. The city did produce some records that it argued. What did you want? We wanted evidence about the repair that took place on January 17, 2019. We wanted to depose the repair crew. We wanted to understand their methodology. And what could that have yielded that would have benefited your client? We think that could have yielded evidence that the city caused the defect.  We're not sure, to be frank, Your Honor, because we haven't had the opportunity to have a deposition. Hypothesize what you could have found that would have suggested the city was responsible based on your taking that kind of evidence. We think it's possible that, as our expert affidavit showed, the city undertook improper techniques by only partially resurfacing the pothole and creating the defect that ultimately... So the suggestion is it didn't repair it correctly? Yes, there was an improper and inadequate repair of the pothole. And was there a good faith basis for thinking that? We think our expert affidavit is the basis. I'm sorry, you think your... Our expert affidavit is the basis. But importantly, we just want discovery to determine that. We're not asking for summary judgment on that question. We just need to gather the evidence to show a genuine issue of material fact. I thought the repairs had been completed six months before the accident. And don't you have to show an immediate temporal connection? Your Honor, the question of immediacy is whether the city's repair immediately caused the defect, not whether the defect immediately caused the injury in this case. That's why the appellate division has found that in an interval of up to two years, there could still be a genuine issue of material fact about whether or not the municipality's action caused the defect. But I do want to be clear that the gap in time is not between the repair and the injury, but between the repair and the causation of the defect. And that's also why the city's evidence is so important here. Because they're the ones who would know what happened when they undertook the repair. If there were any anomalies, if there was something particular about this intersection or the context under which they undertook the repair, that would show that they did improper and inadequate repair. Okay, so but in the six months between the repair and the accident, there were no updates to that intersection in the Big Apple map? That's what we understand from what the city has turned over. We are also seeking depositions from the city's witnesses who performed the record searches. We don't think that it should be the way that litigation unfolds for the move-in to submit records that they believe support their case for further discovery not to be undertaken. No discovery, no depositions taken on our side. And then the court finds that the move-in has presented another case. On the Big Apple map, I mean, what else do you need? It's there or it's not, isn't it? That's true. Either the written notice is there or it's not. And all of that information is in the city's possession. But what we think the written notice that we have, the evidence that the city has turned over shows, is that this is the type of thing that the city would have heard about. It was a busy intersection. There's a lot of work being done, multiple repairs over a short period of time. So we think it's possible that there is some further written notice evidence in the record. But more importantly, we want to understand what happened in January when that repair was undertaken to understand how the defect could have been caused. But you asked the city for these documents, and they replied they didn't have any. It's true that the city has turned over what it says is a complete set. And at this point, we have no reason to doubt that, but we'd like to take depositions to confirm that and to interrogate the specifics. Perhaps there are records they reviewed that they deemed not relevant for some reason. Perhaps there was an issue in data entry. A different intersection popped up that could have shown written notice in this case. Well, it sounds like your issue is with the scope of discovery that you were allowed, not with the decision itself, too. But that seems to be your complaint, that you weren't able to get certain things in discovery that you think you should have. That's certainly our primary argument, that we couldn't prove our opposition to summary judgment, on which everything else in the decision turns without access to the facts that are uniquely in the purview of the city. So we are asking for the court to be directed to allow the discovery that we requested, which includes depositions of the repair crews and depositions of the city's other witnesses, including the record searchers in this case. Why do you want the case remanded to a different judge? Your Honor, I understand the sensitivity of that question. Right. I understand the sensitivity of that question, and I don't have anything to add to the argument that we made in our briefs. Answer the question. I believe what we were trying to suggest in our briefs is that this is a trip-and-fall case. This is the second time, as you know, that this case has been on appeal in the Second Circuit. Our suggestion in the brief was that it might be easier for a remand to take place on a clean slate with a blank page to allow this case to continue. But, again, I understand the sensitivity, and I don't have anything to say. I'm sorry? I understand the sensitivity of the inquiry. We don't mean any disrespect to the district court. We hear sensitive matters all the time. That's part of our job description. Excuse me, Your Honor? We hear sensitive matters all the time. It's included in our job description. So I was just… Thank you. I understand. You have no more response to this? Nothing beyond what I said, that this is the second time we've been on appeal, and we suggest that a remand on a clean slate might be preferable. But we're prepared to proceed under any judge. Okay. Thank you, counsel. You've reserved two minutes for a vote. Thank you. We'll hear from the city. Yes. Good morning. May it please the Court. Chloe Moon on behalf of the City of New York. The district court correctly granted summary judgment here. The city established that it did not have prior written notice of any defect in the crosswalk where Quinn fell, and in response, plaintiff failed to show that the city caused or created any defect. Alternatively, this court may also grant summary judgment on the ground that the Quinns never properly noticed the city of their allegations related to a pothole rather than a gas cap. On prior written notice, just two quick points. Repair orders don't provide prior written notice. That's well-settled state law, and it also makes sense. Once a repair order is completed, it's not providing notice of a defect. On the Big Apple maps, I'd just like to point to the appendix at 208, 209. That's where the Big Apple map is. It doesn't show any defect. Even if it did show a defect, a 2002 Big Apple map simply can't provide prior written notice where we know that there have been repeated repairs to this area. It's just too long ago and has these repair records. I'd also like to point out, based on the colloquy with my adversary, the city provided two years of its prior records. That's everything we have. This is common in these trip and fall cases. We look back for two years of all the records, and here we also have three DOT affidavits, including an affidavit that specifically says it looked for every pothole in that crosswalk and found and repaired them. That's at 890. Your adversary says that if she had had an opportunity to dispose the custodians or dispose the folks who did the search, something else might have popped up. What's your response to that? Your Honor, we disclosed everything we have, and I think, importantly, in their briefs, they specifically are aiming their discovery argument towards the cause and create exception, the affirmative negligence exception, and that only applies if the city immediately created a defect, and we just don't have that here. We have a six-month, a seven-month delay, and there's plenty of well-settled case that shows that that kind of time gap cannot provide the immediacy. And I'd just like to point to a New York State Court of Appeals case on that immediacy requirement, which specifically has held repeatedly that under this statute, there's a difficulty in determining, with pavement especially, after a passage of time whether an initial repair was negligent. And so here in San Marcos v. Village of Mount Kisco, the New York State Court of Appeals has said, a patch of pavement may gradually and unpredictably deteriorate. That's why the statute is set up this way, to require that immediacy. And I'd like to point to their expert affidavit, too, which doesn't explain at all when they think the repairs occurred. It just doesn't give that kind of immediacy that's required for them to establish the cause and create exception, which is, again, their burden under the statute to show. Is it unusual to decide these types of cases without any depositions? I guess I'm just following up on Judge Parker's question. It does seem a little bit odd to me. No, this is exactly how our standard trip and fall proceeds in state court all the time. We do two years of the record results. We have affidavits interpreting those as needed. And this is commonly how motions for summary judgment are resolved in these types of cases. Just a quick point on our JML 50 notice of plaintiff. And just to follow up on that. Oh, yes. Is that just because of the sort of the burden-shifting framework of the pothole law? That's just how these cases play out? Yes, Your Honor. After the city has established its prima facie case, it moves to the plaintiff to establish that the city cause were created. And so where they have, for example, this gap of seven months, there will be nothing. And so you couldn't fill that gap by asking questions of a depositor? Exactly. It just wouldn't substantiate anything. But don't the federal rules of civil procedure trump custom? Certainly, Your Honor. But there's just under here, there's nothing that would have aided their discovery. So they should have, under Rule 56D, objected and filed something to say that they needed further discovery. They didn't do that here. And also, there just — there wouldn't be anything that would have resulted in them being able to create this cause and create exception, to establish this cause. And just — I want to be sure I'm understanding it correctly. There was no Rule 56D after David filed in this case? Correct. There was none. And just a quick point on the notice of claim. We think that's an alternate ground for summary judgment here. Their notice of claim specifies a gas cap. That changes the nature of their claim, which they're now talking about a pothole. And that would have affected our investigation and our assessment of the merits of the claim. So we think, for that reason, this Court can also grant summary judgment. And, of course, the District Court, as the Court can note at A270, never reached that issue. In any event, it's well settled that this Court can affirm whenever the record is sufficient to permit those conclusions of law. Unless the Court has further questions, we ask it to affirm. Thank you. Thank you, Counsel. We'll hear a vote. Thank you, Your Honor. The City's approach would allow it to submit the records that it deems relevant for — Why didn't you file a Rule 56D affidavit? Your Honor, the Court didn't rule on the basis of our failure to file a Rule 56D affidavit. It was incredibly clear to both the City and the Court from the four letters that we submitted before the motion for summary judgment was filed, in addition to our opposition to summary judgment, what kind of discovery we were seeking and why. The District Court didn't rule on that basis, and the City didn't even argue it in the District Court. So we don't think that the Court needs to reach that ground here. All it needs to know is that we ask repeatedly for discovery in this case. We're entitled to depositions to prove that there might be an issue of fact here. The City would like the records that it turns over to be sufficient to prove summary judgment, and we just don't think that litigation should proceed in that way. Well, it seems like the way the law works is that's sufficient to shift the burden to you to come forward with something. And so what is it that you think you've come forward with? The Ferenac affidavit doesn't say anything about the timing. It doesn't fill that six-month gap. It does say that the City caused the defect with its improper and inadequate repair, and we think that's enough at this stage for a jury to conclude that. But we also think that we're entitled to depositions of the repair crew who actually did the repair to understand what happened there. It's easy for the City to say that it doesn't have any more information, but we don't know what kind of interviews it did with the repair crew, what the repair crew did that day out at the site, or any other. What's your response to your adversary's contention that New York law says that for you to show that the City caused it without regard to notice, you have to show that the causation was relatively recent and that the alleged defective repair six months earlier wouldn't satisfy that? The question is really whether the City's repair immediately caused the defect, not whether the defect immediately caused the injury in this case. That's why the appellate division in Kelly v. Hempstead found that a two-year gap between a period where the municipality— You have been emphasizing that the repair was defective, and when there's been no complaint, there's no evidence of any complaint for six months, how do you maintain that? We think that it's possible, and we also think that there could be records establishing that that we haven't had access to. Because you think they didn't supply all the documents indicating what notices or complaints they got about that location? It's just a possibility that at some point in that six-month period, for example, there was a citizen complaint or the record searcher— Wouldn't that have shown up in there? I'm trying to get a sense of whether you're saying that they didn't produce their documents in a bona fide way, such that you want someone under oath saying, I looked, and this is all there is, that you don't think their submission is reliable. That's not at all what we're suggesting, but we would like to confirm the parameters of the search. Were there any documents that were reviewed and deemed not relevant? What were the searchers looking for, and why? But I don't remember seeing that you ever asked the district court that you wanted to ask those questions, were there any documents that were responsive but not produced, and why? I mean, I didn't see an inquiry for that. Perhaps not in those exact terms, but in the four letters that we filed in the district court before the motion for summary judgment was filed, we did ask very specifically for depositions of the record searchers from the city. And again, it's not to impute anything negative towards their record searchers or the job that they did. It's simply our role in litigation to test the factual assertions that they've made. We don't want them to be able to submit two years of documents, say, that's all we have, and that proves that we win. We think that's entirely unsustainable for this case and for, as an intensely factual question, a tort case, and for any other sort of case. Well, I didn't understand, and I don't understand you to be saying we want to personally conduct a search. We want access to their records. Am I right? You are right. Okay. So they have said this is what we've got. What is it more that you want? You want a person who is identified and they're in person to say we've looked and this is all we've got? Yes, to understand how. Why can't the district court say that that's duplicative and unnecessary unless you have some reason to think that they have not given you the documents in a bona fide responsive way? All that we're trying to argue is that this is a case where all of the evidence is in the city's possession, and we think it's possible, just possible, that there was a document reviewed and deemed not relevant, that there's a document that shows, that demonstrates that there was a. . . So since you don't want to look for them yourself, what do you want them to do, look again? We'd just like to ask questions of the record searchers and, importantly, of the repair crew. We'd like to understand how the repair was conducted and to further understand and bolster our expert affidavit on the city's causation of the defect. How do we understand this? Now, the original theory was that this professional golfer was disabled because he tripped over a Con-Ed disc or whatever it was, right? And the alternative or the supplemental theory was that it wasn't that, it was a pothole. Help me understand how this theory of liability evolved. Our theory of liability has been the same from the beginning. What's your theory of liability? When Mr. Quinn was walking through the crosswalk, his foot caught in a gap in the pavement between the pavement asphalt that had existed and the gas cap. So his foot was caught in that gap and he fell injuring himself quite badly. We think that that's an entirely consistent theory of liability. That's what? An entirely consistent theory of liability. There's no question where he fell or what he fell on. The city tries to argue that our notice of claim was insufficient, but the district court in this case determined that the notice of claim was no reason to preclude our claim here. So we don't think the court should reach that ground. But if it did, we simply think there's no way for the city to carry its summary judgment burden on the ground that it was somehow prejudiced by that notice of claim. And the city's presentation on the results of this document search were presented to the district court what, by affidavit on penalties of perjury? That's right, Your Honor. Okay. Thank you, counsel. Thank you both. We'll take the case under advisement. And that concludes our arguments for today. So I'll ask the courtroom deputy to adjourn. Court is adjourned. Thank you.